UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODERICK L. GRIFFIN                          CIVIL ACTION

VERSUS                                       NO: 12-2932

JERRY GOODWIN                                SECTION: R(5)

**ORDER AND REASONS**

Before the Court is Roderick Griffin's petition for federal
*habeas corpus* relief under Title 28, United States Code, Section
2254. The Magistrate Judge has recommended that Payne's petition
be dismissed with prejudice.[1] The Court, having reviewed de novo
the petition, the record, the applicable law, the Magistrate's
Report and Recommendation ("R&R"), and the petitioner's
objections thereto, hereby approves the R&R and adopts it as its
opinion.

In his objection, petitioner again cites *State of Louisiana
v. Thompson*, No. 2009-KW-735 (La. App. 1st Cir. 10/23/09),[2] and
*Gibbs v. Louisiana Department of Public Safety and Corrections*,
No. 2007-CW-1066 (La. App. 1st Cir. 12/03/07)[3] for the
proposition that the Louisiana Courts of Appeal will occasionally
consider an application for rehearing after denying a writ
application notwithstanding the contrary terms of Rule 2-18.7.

---

[1]     R. Doc. 18.

[2]     State Rec. Vol. 8 of 8.

[3]     R. Doc. 16 at 20.

He argues that because the Courts of Appeal make such exceptions, *Emerson v. Johnson*, 243 F.3d 931 (5th Cir. 2001), compels the conclusion that his application for rehearing was a "properly filed application" for post-conviction review, thus interrupting the AEDPA's one year limitations period.  As the magistrate judge noted, however, the First Circuit Court of Appeal did not consider the applications for rehearing in *Thompson* and *Gibbs*, and there is no other evidence that the Louisiana Courts of Appeal grant exceptions to Rule 2-18.7's prohibition on applications for rehearing following the denial of a writ application.

Griffin also points to *Thompson* and *Gibbs* as evidence that the Louisiana Supreme Court will occasionally entertain a writ application that was not filed within 30 days of the mailing of the notice of the appellate court judgment as required by Rule X, Section 5(a) of the Rules of the Supreme Court of Louisiana. Petitioner argues that because the Supreme Court makes such exceptions, his writ application with the Louisiana Supreme Court, although filed some three months after the First Circuit's denial of his writ application, was "properly filed" for the purposes of the AEDPA's tolling provision.  As both *Gibbs* and *Thompson* are decisions of the First Circuit Court of Appeals, they do not speak to the Louisiana Supreme Court's enforcement (or lack thereof) of Rule X, Section 5(a).  The Court observes,

however, that petitioner also attached to his reply brief a copy
of First Circuit's denial of Gibbs' original writ application,[4]
as well as the Louisiana Supreme Court's subsequent decision
granting the writ.[5]  The First Circuit denied the original writ
application on August 6, 2007.  The application for rehearing was
denied on December 3, 2007, and the application for review with
the Louisiana Supreme Court was not docketed until some time in
2008.[6]  By granting the writ, it appears that the Supreme Court
may have on one occasion exercised its supervisory authority over
lower courts to grant an exception to the 30-day rule.

In *Emerson*, the Fifth Circuit held that a petitioner's
motion for reconsideration filed with the Texas Court of Criminal
Appeals was "properly filed" for purposes of interrupting the
petitioner's one-year statute of limitations for federal habeas
relief.  The Court reached its decision after finding that the
Texas Court of Criminal Appeals routinely entertained motions for
reconsideration, notwithstanding Tex. R. App. P. § 213(b), which
read:

> No motions for rehearing or reconsideration will be
> entertained from a denial of relief without docketing of the
> cause. The court, however, may on its own motion, reconsider

---

[4]     *Gibbs v. La. Dep't of Pub. Safety and Corr.*, No. 2007-
CW-1066 (La. App. 1st Cir. 08/06/07); R. Doc. 16 at 19.

[5]     *Gibbs v. La. Dep't of Pub. Safety and Corr.*, No. 2008-
CI-0815 (La. 01/03/09); R. Doc. 16 at 20-22.

[6]     The case was assigned number 2008-CI-0815.

3

such initial disposition.

The Court reasoned that the petitioner should not be punished for his attempt to exhaust his state remedies when it was impossible to predict whether the state's appellate courts would entertain a motion for reconsideration:

> [T]he Texas courts have provided state habeas petitioners with the hope that a motion or suggestion for reconsideration may be successful. Meanwhile, we are unable to find a single case in which the Texas courts have held that § 213(b) does not permit the filing of a motion for reconsideration. . . . In short, we defer to Texas courts' application of state law. Additionally, part of the congressional rationale in passing AEDPA stemmed from a desire to require habeas petitioners to exhaust their claims in state courts. However, since habeas petitioners such as Emerson may be unable to predict whether the Texas courts would apply the literal language of § 213(b) or the holdings of *Graham*, *Smith*, and *Lemke*, many would bypass possible state court consideration of their claims and move directly to federal court. *See Villegas*, 184 F.3d at 472; *see also Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998) ("Nor should we discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.").

Griffin's failure to timely file his writ application with the Louisiana Supreme Court is distinguishable from Emerson's decision to file a motion for reconsideration notwithstanding the language of § 213(b).  First, in *Emerson*, the statute expressly permitted Texas courts to entertain requests for reconsideration on their own motion, and there were numerous cases in which the courts exercised that power at a petitioner's request.  In

4

contrast, Rule X, Section 5(a) provides no exceptions to the 30-day filing rule and expressly states that "[n]o extension of time will be granted."  Aside from *Gibbs*, in which the court's decision to grant an exception can be discerned only from the case's docket number, the decisions of the Louisiana courts and the Fifth Circuit overwhelmingly indicate that the 30-day filing deadline is absolute.  For example, in both *K.A.E.M. v. J.M.C.*, 983 So. 2d 1259 (La. 2008), and *State v. Crandell*, 924 So. 2d 122 (La. 2006), the Louisiana Supreme Court denied the petitioners' writ applications as untimely under circumstances identical those presently facing Griffin.  In each case, the Court of Appeal denied the petitioner's writ application, and the petitioner improperly filed an application for rehearing.  Within 30 days of learning that their applications for rehearing had been denied, both petitioners filed writ applications with the Supreme Court. In both cases, the Louisiana Supreme Court denied the writs as untimely.  As the Court explained in *Crandell*,

> Defendant's writ application in this court was filed on April 25, 2005, more than thirty days after the court of appeal's denial of his application. Although defendant's application in this court was filed within thirty days of the court of appeal's denial of rehearing, the application was untimely filed because a rehearing of the court of appeal's writ denial was not allowed.

*See also, e.g., Williams v. Cain*, 217 F.3d 303, 309 (5th Cir. 2000) (observing that "there is no express provision in the Louisiana Supreme Court Rule or the Louisiana post-conviction

statutes that would permit a petitioner to avoid the thirty-day filing deadline," that "Rule X, § 5(a) expressly prohibits any extension of the thirty-day period," and that "[t]here is no requirement in the rule that the Louisiana Supreme Court consider an untimely application for a supervisory writ upon a petitioner's allegation and proof of certain facts defined by statute"); *Butler v. Cain*, 533 F.3d 314, 319 (5th Cir. 2008) (commenting that "the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits" and that the Court was "not aware of any case in which the Louisiana Supreme Court *sua sponte* extended the amount of time in which to file under Rule X, § 5(a)").

Second, the rationale underlying the Fifth Circuit's decision in *Emerson* does not apply when a petitioner simply fails to comply with a state filing deadline. In *Emerson*, none of the petitioner's filings in state court were untimely. The question, therefore, was not whether an untimely state court petition could be "properly filed" for the purpose of tolling the AEDPA's one-year deadline. Instead, the question was whether the one-year limitations period should remain tolled while the petitioner sought to further exhaust his state remedies in a jurisdiction where motions to reconsider often were permitted. In ruling as it did, the Fifth Circuit sought to encourage petitioners to fully exhaust their state remedies by assuring them that they

would not be punished when it was unclear whether an additional level of review was available to them.  In Griffin's case, his failure to comply with the Supreme Court's 30-day filing deadline cannot be characterized as an attempt to further exhaust his remedies.

Griffin's failure to comply with the 30-day filing deadline is not equivalent to Emerson's strategic decision to pursue an avenue of state-level review that potentially would obviate the need for federal habeas review.  In *Emerson*, the Court sought to encourage petitioners to seek a form of state review that frequently was available to them before turning to the federal courts.  In contrast, there is no indication that the Fifth Circuit would encourage petitioners to ignore a state court's filing deadlines.  It is therefore unlikely that the Fifth Circuit would excuse a petitioner's failure to comply with a state filing deadline simply because the Louisiana Supreme Court once did so.  To hold otherwise would mean that any petitioner could ignore the 30-day filing rule and postpone his writ application to the Louisiana Supreme Court by up to a year without affecting his federal habeas eligibility, all because the Louisiana Supreme Court on rare occasion may exercise its supervisory authority over the lower courts by granting an untimely writ application to correct a serious error.

Finally, and most importantly, the Supreme Court's decision

in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), appears to abrogate *Emerson* to the extent that it may have applied to timeliness statutes. In *Pace*, the Supreme Court held that the existence of certain statutory exceptions to a timely filing requirement would not prevent a late application from being considered improperly filed. *Id.* at 413. The Court explained:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.* The Court concluded that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter'" for purposes of the AEDPA's tolling provision. 544 U.S. at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).

Three years later, the Fifth Circuit addressed *Pace*'s holding, acknowledging that "time limits, no matter their form, are 'filing' conditions, and that a state postconviction petition is therefore not "properly filed" if it was rejected by the state court as untimely." *Wardlaw v. Cain*, 541 F.3d 275, 278 (5th Cir. 2008) (internal quotation marks omitted). The Court concluded that *Pace* abrogated its earlier decision in *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000), in which a panel of the Fifth Circuit held that a state habeas petition could be "properly

8

filed," even if eventually dismissed in state court as untimely,
if the state statute governing timeliness contained exceptions
that required some level of judicial review. *Wardlaw*, 541 F.3d
at 277.  If, as the Court in *Wardlaw* acknowledged, a state
postconviction petition is not "properly filed" when it is
rejected as untimely, then there is no meaningful distinction
between a petition that is rejected as untimely despite the
existence of statutory exceptions to the rule and one that is
rejected as untimely despite the state court's theoretical
ability to grant an exception pursuant to its supervisory
authority over the lower courts.  Though the Fifth Circuit
continues to follow *Emerson*'s holding in the context of motions
to reconsider, *see Wilson v. Cain*, 564 F.3d 702, 705-06 (5th Cir.
2009), *Pace* seemingly precludes its application to state
timeliness rules.[7]  Accordingly, petitioner's claim that his writ

---

[7] Indeed, both the Sixth and Seventh Circuits have suggested
that *Emerson* was "wrongly decided" to the extent it held "that
petitions untimely under state rules nonetheless may be deemed
properly filed." *Brooks v. Walls*, 301 F.3d 839, 841 (7th Cir.
2002) (internal quotation marks omitted) (citing *Saffold*, 536
U.S. at 226); *Sherwood v. Prelesnik*, 579 F.3d 581, 586 (6th Cir.
2009) (observing, somewhat confusingly, that *Brooks* "abrogated"
*Emerson* to the extent that it allowed untimely state applications
to be deemed "properly filed").  In *Wardlaw*, the Fifth Circuit
disputed that *Emerson* and *Smith* were "wrongly decided" *before* the
Supreme Court's decision in *Pace,* because it believed that
*Saffold*, in which the Supreme Court suggested in dicta that an
untimely state application could not be "properly filed," did not
make that determination its explicit holding.  *Wardlaw*, 541 F.3d
at 278 (citing *Saffold*, 536 U.S. at 224-26).  The *Wardlaw* Court
acknowledged, however, that the Supreme Court explicitly held in
*Pace* what it had "intimated in *Saffold*" before concluding that

application to the Supreme Court was "properly filed" despite
being denied as untimely is without merit.

Petitioner also objects to the magistrate judge's conclusion
that the alleged inadequacy of the prison law library did not
warrant tolling of the AEDPA's one-year filing deadline.
Petitioner argued in his reply brief that he was entitled to
equitable tolling because

> events prevented him from learning that the application for
> rehearing from a writ denial and a filing of the related
> writ application with the Louisiana Supreme Court "may not"
> serve to interrupt the AEDPA filing period, for example: 1)
> inadequate access to law library [sic] and persons trained
> in the law, which occurred on and After April 13, 2009, the
> date of his writ denial (2010-KW-2365).[8]

He also argued that the inadequacy of the law library served as
grounds for statutory tolling under 28 U.S.C. § 2244(d)(1)(B).
The magistrate judge rejected petitioner's equitable tolling
argument but did not address the issue of statutory tolling.  In
his objection, petitioner reiterates that the law library "was
inadequate for him to learn correct procedures," citing cases
that address the propriety of statutory tolling under those
circumstances.

---

*Pace* abrogated *Smith.  Id.*  It made no such determination as to
*Emerson*–perhaps because *Emerson* was never meant to suggest that
an untimely petition could be "properly filed"–but the reasoning
of *Wardlaw* amounts to an implicit acknowledgment that *Emerson* is
no longer good law to the extent that it may have applied to
petitions deemed untimely under state law.

[8] R. Doc. 16 at 6.

A petitioner may be entitled to *statutory* tolling if he can
show that the state failed to provide copies of the legal
materials necessary for him to challenge his conviction.  *See
Egerton v. Cockrell*, 334 F.3d 433, 436-38 (5th Cir. 2003).
Petitioner alleges in a conclusory fashion that the law library
was "inadequate for him to learn correct procedures."  He also
complains that the Louisiana courts never provided him with
directions explaining the procedures for postconviction review
and did not notify him that his application for rehearing and
writ application to the Supreme Court were not properly filed.
He never alleges, however, that he was unable to access a copy of
Louisiana's court rules or of the AEDPA.  Absent such
allegations, his statutory tolling claim fails.  *See, e.g.,
Radcliff v. King*, No. 4:10CV193-DPJ-FKB, 2011 WL 4014465, at *6
(S.D. Miss. Sept. 9, 2011) (rejecting petitioner's claim for
statutory tolling because, unlike in *Egerton*, the petitioner had
access to a copy of the AEDPA); *Unites States v. Ochoa-Molina*,
C.R. No. C-06-692, 2009 WL 700098, at *4 (S.D. Tex. Mar. 16,
2009) (distinguishing federal prisoner's claim for statutory
tolling from the facts in *Egerton,* because the petitioner did not
allege a lack of access to a copy of 28 U.S.C. § 2255).

Finally, petitioner objects to the magistrate judge's
conclusion that his claim of actual innocence does not relieve
him from the AEDPA's one-year prescription period.  This

11

objection is without merit.  Griffin does not deny meeting with
Detective Ohler on April 19, 2006, which was the date of the
transaction resulting in his conviction, but he claims that he
did not sell Detective Ohler any crack cocaine at that meeting.
He alleges that Detective Ohler removed some of the crack cocaine
that was taken from Griffin's car following his arrest on May 2,
2006 and submitted it for testing in a package identifying it as
the crack cocaine purchased at the April 19 meeting.[9]  In support
of this claim, Griffin points out that Detective Ohler completed
an investigation report in which he stated that the crack cocaine
purchased on April 19 weighed approximately 4 grams in its
cellophane packaging, and the crack cocaine seized from Griffin's
vehicle on May 2 weighed approximately 28.6 grams in its
cellophane packaging.[10]  Detective Ohler apparently kept the
cocaine purchased on April 19 in a safe in his office until he
completed the necessary forms and submitted them, along with the
cocaine, to the evidence depository on some date between April 19
and May 2.[11]  When the samples were tested at the state crime

--------

[9]  R. Doc. 1 at 26-33.

[10]  R. Doc. 4-1 at 58-63.  *See also* Trial Transcript, Vol. 4
of 8, p. 710 (Detective Ohler explains that the drugs are weighed
in the cellophane packaging.), and R. Doc. 4-1 at 73-74 (evidence
receipt forms listing the amounts of 4.0 grams and 28.6 grams,
respectively).

[11]  Records revealed that an evidence technician retrieved
the cocaine from the depository on May 2nd, but it is possible
that Detective Ohler placed it in the depository on an earlier

laboratory without the cellophane packaging, the smaller quantity weighed 2.86 grams, and the larger quantity weighed 26.13 grams.[12]  Griffin views this as conclusive evidence that the crack cocaine that Detective Ohler claimed to have purchased at the April 19th meeting never in fact existed, and that the cocaine he submitted as evidence of that purchase was actually taken from the larger sample seized on May 2.

The first problem with Griffin's theory is that if Detective Ohler had taken 2.86 grams of cocaine from a sample weighing 28.6 grams, then the remainder would weigh only 25.74 grams, not 26.13 grams.  The math does not work.  Second, Griffin disregards the fact that both samples *should* have weighed slightly less when removed from the cellophane packaging, which they did.  Griffin argues that Sergeant O'Neal, the state's expert witness from the crime laboratory, testified that the smaller sample would weigh 10 or 11 grams–not four–if weighed in its packaging.[13]  But Sergeant O'Neal actually testified that the sample would weigh 10 or 11 grams if weighed inside the *evidence* envelope,[14] which contained both the drugs and their original cellophane packaging

---

date.  He does not recall the precise date on which he did this. *See* Trial Transcript, Vol. 4 of 8, pp. 724-731.

[12]   R. Doc. 4-1 at 69-70.

[13]   R. Doc. 1 at 31 (citing Trial Transcript, Vol. 4 of 8, pp. 754-55).

[14]   Trial Transcript, Vol. 4 of 8, pp. 754-55.

and is sealed with tape.[15]

Detective Ohler testified in detail regarding the drug purchase he made from Griffin on April 19.  Video and audio surveillance confirmed that a meeting did occur between Griffin and Detective Ohler, which Griffin does not deny.  Griffin did not introduce any evidence contradicting Detective Ohler's testimony that he purchased drugs from Griffin.  Even if the jury had been aware of Griffin's evidence-tampering theory, the Court is not persuaded that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

Rule 11 of the Rules Governing Section 2254 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."[16] A court may only issue a certificate of appealability if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could

---

[15]    *Id*. at 731.

[16]    Rules Governing Section 2254 Proceedings, Rule 11(a).

14

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Petitioner's application does not satisfy this standard. For the reasons articulated by the magistrate judge and this Court, Griffin's petition is untimely and his objections are without merit.  The issues would not engender debate among reasonable jurists.

For the foregoing reasons, the Court DENIES Griffin's petition for federal habeas corpus relief and DENIES the issuance of a certificate of appealability.


New Orleans, Louisiana, this __1st__ day of April, 2014.

                        _____
                             SARAH S. VANCE
                        UNITED STATES DISTRICT JUDGE